## THE STATE v. MARSH, Appellant.

Division Two, February 3, 1903.

1. **Murder in Second Degree: INSTRUCTION: PREMEDITATEDLY.** Where there is a willful killing with malice aforethought, that is, with malice and premeditation, but not with deliberation, or in a cool

state of the blood, the offense is murder in the second degree. So that an instruction which told the jury that if "the defendant did unlawfully, premeditatedly and of his malice aforethought, but without deliberation, as defined in these instructions" kill defendant, he was guilty of murder in the second degree, is not error. Especially is it not error, if "premeditatedly" is in other instructions defined as "thought of beforehand" and "malice aforethought" as meaning that the killing was done with "malice and premeditation."

2. **Instruction:** ASSUMING FACT IN ISSUE. An instruction should not assume a material and controverted fact in issue, for instance, that defendant did the killing where the defense is an alibi.

3. ————: REASONABLE DOUBT. Where the question of reasonable doubt is sufficiently covered by the instructions given, it is not error to refuse others bearing on the same subject.

Appeal from Carroll Circuit Court.—*Hon. Jno. P. Butler*, Judge.

REVERSED AND REMANDED.

*Busby & Kneisley* and *Conkling & Rea* for appellant.

(1) Instruction 2 for the State is erroneous in omitting the word "willfully." In omitting this word, the offense of murder in the second degree was not correctly defined. This is reversible error. R. S. 1899, secs. 1815-1816; State v. Gassert, 65 Mo. 352; State v. Wieners, 66 Mo. 13; State v. Curtis, 70 Mo. 598; State v. Eaton, 75 Mo. 590; State v. Harris, 76 Mo. 364; State v. McKinzie, 102 Mo. 621; State v. Evans, 124 Mo. 411; State v. Smith, 164 Mo. 567. All the foregoing cases discuss the law of murder in the second degree. In each of them it is held that the act must have been committed willfully or intentionally and that such element is indispensable to constitute the offense. (2) Instruction 6 for the State assumes a material and controverted fact, that is, that defendant did the killing. This was the one issue of fact in the case. It was the vital issue. Defendant denied it. He was entitled to have this issue fairly submitted to the jury. To assume this contro-

verted fact was to deprive him of his only defense. It
was surely prejudicial. State v. Dillihunty, 18 Mo.
331; State v. Edwards, 71 Mo. 312; State v. Wheeler,
79 Mo. 366; State v. Miller, 111 Mo. 551. (3) The
court refused to instruct that, if from all the evidence the
jury was neither morally certain of defendant's guilt
nor of his innocence, then a reasonable doubt existed.
The above instruction has time and again received the
approval of this court. In this case such an instruction
was peculiarly appropriate. Defendant was charged
with murder and his life or liberty hung on the identi-
fication of one man. This one witness was an inter-
ested party. His alleged identification was on a dark
night, was made through a small aperture in a car door
and was made amid the excitement of pistol shots. The
defendant denies his presence. Another man avows that
he, himself, did the shooting, and that defendant was
not there. Was not this a case for reasonable doubt?

*Edward C. Crow*, Attorney-General, and *Sam B.
Jeffries*, Assistant Attorney-General, for the State.

(1) It would have been better form to have used
the word "willfully" in defining the offense, but its
omission will not necessarily authorize a reversal. The
term "willfully" means intentionally and not accident-
ally, which, if taken in connection with the full meaning
of the other words used, shows beyond question that the
jury was properly instructed as to the intention neces-
sary. Besides that question, the instruction refers to
all the essential elements of murder in the second degree
by the use of the words "and without deliberation as
defined in these instructions." By this reference, the
jury was told that murder in the second degree is the
same as murder in the first degree with the exception
of deliberation. It has always been held competent to
makes references of this kind in an instruction. State
v. Stephens, 96 Mo. 637; State v. Harper, 149 Mo. 520;
State v. Cushing, 29 Mo. 216; State v. Walker, 78 Mo.
380. The term "malice" is used in these instructions

on murder in the second degree which of itself is sufficient to include the term "willfully," and intentionally, the term "malice" meaning willfully and intentionally. (2) Instruction 6 is made the subject of an attack. The charge is made that it admits a material controverted fact, that is, that it admits that defendant did the killing. This instruction is not subject to the objection raised, for the reason, in the first place, that it is accompanied with other instructions which leave it to the jury to determine whether the assumed facts are true. State v. Hecox, 83 Mo. 531. A fact not controverted at the trial may be assumed in the instructions. In this case the fact that the homicide was committed is not questioned. Indeed, defendant admits that it was committed, but by a different person than himself. He does not deny having been in company with the person charged by him as committing the offense, though his defense is that he was not present at the time. The instruction, under the circumstances of the case, was eminently proper and it was necessary for the court to give it in order that the jury might have the full benefit of the law as applicable to the case.

BURGESS, J.—At the September term, 1901, of the circuit court of Carroll county, the defendant and one Richard Moran were jointly indicted for murder in the first degree for having at said county on May 28, 1901, shot and killed with a pistol one Charles McKinney.

Thereafter a severance was ordered, Moran was put upon trial, and convicted of murder in the second degree. Subsequently to the conviction of Moran, to-wit, at the April term, 1902, of said court, defendant Marsh was tried and convicted of murder in the second degree, and his punishment fixed at ten years imprisonment in the penitentiary. After the usual motions in such cases for new trial and in arrest were filed by him and overruled, he appeals.

The defense was an alibi.

The facts briefly stated are as follows:

James McKinney was a policeman of Carrollton, Missouri, at the time of the homicide. On the night that it occurred he went with his son, the deceased, Charles McKinney, and one Dan Titus, a negro, to the Burlington railroad depot at Carrollton, where he found some tramps sleeping in a refrigerator car. · These tramps were aroused and driven away. This occurred about midnight. Co-defendant and Moran started in a northwesterly direction, and ran into some brush about three hundred yards from the depot. He afterwards came back to the platform and called for his coat, which he put on and followed in the direction of his companions. About two hours afterwards, the policeman, in company with his son and Titus, returned to the car, where they saw a light, and on looking closely discovered that the same tramps were in the car as before and were burning some paper. The deceased was in advance and on stepping up to the car door which was open about twenty inches, he called to the parties on the inside not to burn the car. Whereupon, according to the testimony of James McKinney, the defendant raised his revolver and fired, the bullet taking effect in the body of his son, from the effects of which he died in a few moments. Several shots were fired by both parties, defendants escaping and nothing being seen of them until the following morning, when they were tracked to a farm a few miles from town and arrested. They were seen by various parties together and resisted arrest, firing several shots in the attempt to keep their pursuers away. Upon being arrested they were searched, but no arms found upon their persons. Defendant denied being present at the time the fatal shot was fired, stating that, after leaving the car in the first instance, he did not return, but went down to the Santa Fe depot, where he remained the balance of the night. His statement is supported by the deposition of Moran, taken at the penitentiary, to the effect that he fired the shot, and that defendant was not present at the time. James McKinney, however, testified positively that defendant fired the shot, and that the light from the burn-

ing paper on the inside of the car was sufficient to enable him to see the defendant and identify him.

The court instructed the jury for murder in the first and second degrees, and on alibi.

Defendant's first insistence is that the second instruction given on the part of the State is erroneous, in that it omits to tell the jury that in order to constitute murder in the second degree the homicide must have been committed "willfully" or "intentionally."

It reads as follows:

"2.   If you find from the evidence beyond a reasonable doubt that at the county of Carroll in the State of Missouri, at any time before the finding of the indictment herein, the defendant did unlawfully, premeditatedly, and of his malice aforethought, but without 'deliberation,' as defined in these instructions, kill Charles McKinney, by shooting him with a revolving pistol, then and there loaded with gunpowder and leaden balls, you will find the defendant guilty of murder in the second degree, and assess his punishment at imprisonment in the penitentiary for a term of not less than ten years."

"Murder in the second degree is the wrongful killing of a human being with malice aforethought but without deliberation.   It is when the intent to kill is, in a heat of passion, executed the instant it is conceived or before there has been time for the passion to subside. We do not use the phrase, 'heat of passion' in its technical sense, but as a condition of mind contradistinguished from a cool state of the blood."   [State v. Wieners, 66 Mo. 13.]

In State v. Curtis, 70 Mo. 594, it is said:   "Where there is a willful killing with malice aforethought, *that is*, with malice and premeditation, but not with deliberation, or in a cool state of the blood, the offense is murder in the second degree."   Now in the instruction under comment, both the terms "premeditatedly" "and of his malice aforethought" are used.

"Premeditatedly" was defined in instruction number one given in behalf of the State, as "thought of be-

forehand for any length of time, however short," and "malice aforethought" as meaning that the killing was done with "malice" and "premeditation," so that not only do the terms used in the challenged instruction bring it strictly within the foregoing quotation from State v. Curtis, supra, but the definition of those terms as given by the court does so also.

The sixth instruction given on the part of the State is challenged, and we think with much more reason, upon the ground that it assumes a material and controverted fact in issue, that is, that defendant did the killing. An hour or two before the homicide the defendant and others with him had been assaulted and abused by the deceased and others, and the court instructed the jury that "such prior assault and abuse, if any, by Charles McKinney and others would not, in and of itself justify the defendant in killing said McKinney an hour or two thereafter, without some effort on the part of McKinney or those accompanying him to renew the assault or to carry into effect the treats, if any, previously made," thus assuming that defendant killed McKinney when his defense was an alibi. It has been universally held by this court that an instruction which assumed a controverted fact to be true is erroneous. [State v. Wheeler, 79 Mo. 366; Comer v. Taylor, 82 Mo. 346; State v. Miller, 111 Mo. 542; State v. Dillihunty, 18 Mo. 331.]

A final contention is, that the court erred in refusing an instruction asked by defendant to the effect that if from all the evidence in the case the jury were neither morally certain of defendant's guilt nor of his innocence, then a reasonable doubt existed. But the question of reasonable doubt was sufficiently covered by the instructions that were given, which was all that was necessary.

For the reason intimated the judgment is reversed and the cause remanded. All concur.