THE STATE v. VERDO LINK, Appellant.—3 S. W. (2d) 369.

Division Two, February 18, 1928.

*G. W. Thornberry* for appellant.

*North T. Gentry*, Attorney-General, and *Smith B. Atwood*, Assistant Attorney-General, for respondent.

WALKER, J.—An information was filed in the Circuit Court of Stone County charging Verdo Link with having stolen a number of chickens of the value of fifty dollars. Upon a trial he was convicted and sentenced to two years' imprisonment in the penitentiary. From this judgment he appeals.

The testimony for the State disclosed that one J. E. Gibbs, who was in the poultry business, discovered upon a return to his home

with his family after a days' absence, that about half of his flock of chickens, which had numbered more than one hundred, was missing. Informed of this loss and necessarily of other facts justifying action, the prosecuting attorney filed the information against the defendant upon which this trial was had. Marion Hembree, a brother-in-law of Gibbs, testified that he was in Marionville, a village in Stone County, on the day of Gibbs's and his family's absence from home. In conversation with the defendant, who was keeping a restaurant, the latter said he wanted some chickens. While not so stated it necessarily follows from what subsequently occurred that the witness informed the defendant that he could supply his demand. Defendant at once got his car and taking one Henry Estes with them he and Hembree went to the country and drove about a mile or more beyond the residence of J. E. Gibbs, the owner of the chickens. The defendant waited at that point in his car, and Hembree and Estes went back to Gibbs's house; filled two gunny sacks, with which they were provided, with chickens and took them back and placed them in the car. The defendant then drove back to town with Hembree and Estes and going to the house of his father-in-law they turned the chickens loose. Defendant then paid Hembree and Estes five dollars apiece for helping him get the chickens. This witness further testified that when the defendant said he wanted some chickens, the witness told him that he could steal some chickens, and that the defendant said if he did defendant would take them after they were stolen.

Henry Estes testified that he accompanied Hembree and the defendant when they went after the chickens. That they did not tell him where they were going or what they intended to do until they got out into the country, when they said that they were going out to Hembree's sister's (Gibbs's wife) to get some chickens; that they stopped at some distance beyond Gibbs's place, where the defendant waited for them while they went to Gibbs's hen house, got the chickens, came back and put them in the defendant's car and returned to town. Arriving there they took the chickens to the house of the defendant's father-in-law, as directed by the defendant, and unloaded them.

Defendant testified that at the time of the alleged offense he lived in Marionville and was running a restaurant. On the last Sunday in May, 1926, he was at home when Hembree and Estes came to him to hire his car. He told them he was going to drive to Crane, to which they replied that they also wanted to go there and asked if they could go with him. Accordingly, defendant, his father-in-law, brother-in-law and the two boys drove into Crane together. All got out of the car and the two boys disappeared and returned in about an hour and a half with two sacks of chickens. They told him that the chickens were obtained from Hembree's sister and he bought them

for twenty cents apiece. There was evidence that defendant inquired if they had been stolen, and that was denied. The chickens were taken to his father-in-law's and turned loose. This evidence was substantiated by the testimony of defendant's wife, his father-in-law and brother-in-law, but was not believed by the jury. There was evidence on the part of the defense that Estes and Hembree had been jointly charged and convicted of stealing cream at Aurora.

I. Objection was made to the testimony of certain witnesses, because their names were not endorsed on the information; that they had not been subpoenaed and that the defendant had no notice that they would be called until their testimony was offered at the trial. When objection was made to the testimony of one of these witnesses, Hembree, for the reasons above set forth, the court said to counsel: "I will give you an opportunity to talk with him before he testifies." Counsel for the defendant, after conferring with the witness, returned to the court room and renewed his objection, which was overruled, and the witness was called by the State and gave his testimony. This manner of challenging the competency of a witness will not suffice to preserve the objection for our consideration. Neither a motion to quash nor a demand for a reasonable time to meet the testimony of the witness was made. The conduct of the court was exceedingly considerate in the protection of the rights of the defendant in extending an opportunity for counsel to confer with the witness, evidently to enable him to ascertain the nature of the witnesses' testimony and, if desired, to demand time within which to meet it. After this conference counsel contented himself with simply repeating his objection. The reasonable inference from this course is, not that counsel was ignorant of the required procedure, but that he found nothing in the witnesses' testimony to sustain a demand for time. Be that as it may, the objection was properly overruled. We have recently had occasion in State v. Cook, 318 Mo. 1233, 3 S. W. (2d) 365, to rule upon this question, with citations and the discussion of numerous cases. As in that case, so in this, we find no reason for questioning the correctness of the ruling of the trial court in this regard.

In objecting to the testimony of the witness (Estes), for the same reason as that urged against Hembree's testimony, counsel for the defendant demanded no time to confer with the witness or to be afforded an opportunity to ascertain what his testimony would be, but simply, as in the case of Hembree, objected to his testifying. This objection was therefore properly overruled for the reasons before stated.

II. That the witnesses Hembree and Estes, above referred to, were self-confessed criminals and were under separate indictments for the same offense, does not render their testimony inadmissible. Their turpitude, while a proper subject of consideration by the jury as affecting their credibility, does not render them incompetent as witnesses. They were not jointly charged with the defendant and are not within the terms of the disqualifying statute. [Sec. 4035, R. S. 1919.] If accomplices of the defendant in this crime, but separately charged, they were competent witnesses against him. [State v. Meyers, 198 Mo. 225; State v. Broyles, 295 S. W. 556; State v. Braden, 295 S. W. (Mo.) 784; State v. Newman, 289 S. W. (Mo.) 831; State v. Hayes, 247 S. W. (Mo.) 165.]

III. The objections made to the remarks of the prosecuting attorney in his argument to the jury were sustained. To the demand that the counsel be reprimanded there is no ruling, and no objection was made or exception saved to the failure of the court to rule as thus requested.

IV. After the jury had retired to begin their deliberations one of the jurors returned for a moment to the court room in the custody of the sheriff and asked the court if they could find the defendant guilty and leave the punishment to the court. What answer, if any, was made by the court is not disclosed by the record. When this occurred counsel for the defendant objected, not to the inquiry, but because the juror's act resulted in an unauthorized separation of the jury. The court overruled this objection. There are exceptions to the application of the statutes (Secs. 4026 and 4027, R. S. 1919), forbidding the separation of jurors. Despite the mandatory terms of these sections, it has been held in several well-considered cases, that where, as at bar, the jurors were at all times under the immediate supervision of a sworn officer, and the separation was but momentary and no opportunity was afforded to subject them to any improper influence, the objection to their separation is properly overruled. [State v. Tarwater, 293 Mo. l. c. 291 and cases, 239 S. W. 480.]

V. That the testimony for the respective parties was conflicting the transcript of the same bears witness. With this we are concerned only so far as to determine if there was substantial evidence to sustain the charge. The physical facts, aside from the oral testimony, are convincing of the defendant's guilt. He furnished a car and accompanied Hembree and Estes, not to any residence, but a point, probably in the woods, where he waited for them to return with the

chickens. · An honest man, as it is evident the defendant is not, instead of pursuing this furtive course would have insisted upon going to the residence of the party from whom they were to obtain the chickens, instead of "hiding out" until they were brought to him. Having brought the chickens to the defendant's car in gunny sacks, which it is reasonable to presume were furnished by the defendant, he took the chickens back to town—not to his own residence but to that of his father-in-law.

There is no ground for controversy that the chickens were not stolen. They were taken from the premises of their owner in the nighttime while on their roosts, where they would not have been in the daytime. No effort was made, despite the denial of the defendant's relatives of his criminality, to show that there was any pretense of authority for the taking. The jury, evidently of average intelligence and familiar with the actions of honest men in the ordinary transactions of everyday life, found no difficulty in determining the truth of this transaction. In so doing, despite the character of the State's witnesses, they gave credence to their testimony and rejected as unworthy of belief the testimony of the witnesses for the defense. Satisfied as to the correctness of their conclusions and finding no prejudicial error in the record, the judgment of the trial court is affirmed. All concur.