THE STATE v. DENNIS MOREFIELD, Appellant.—119 S. W. (2d) 315.

Division Two, August 17, 1938.

1060

*Phil M. Donnelly, Barney Reed, Morgan Moulder, Fred Stewart* and *J. Andy Zenge, Jr.* for appellant.

*Roy McKittrick*, Attorney General, and *Covell R. Hewitt*, Assistant Attorney General, for respondent.

WESTHUES, C.—This case, coming to the writer on reassignment, is an appeal, by Dennis Morefield, from a judgment and sentence of imprisonment in the penitentiary for life, on a charge of murder in the first degree.

The alleged crime was committed on July 9, 1935, in Douglas County, Missouri. An application for a change of venue was granted and the case was transferred to Ozark County where a trial was had.

A jury returned a verdict of guilty and assessed the punishment at life imprisonment in the penitentiary.

The evidence introduced by the State disclosed the following: Clifford Woolery, John W. Huff, Henry "Fat" Morefield and appellant, Dennis Morefield, left Camdenton, Missouri, in a car driven by appellant on the afternoon of July 9, 1935, and drove to the home of the deceased, Rondo Ellison, who lived with his mother a few miles north of Ava, Missouri. On the way they stopped at Seymour and asked one Oscar Barnhouse if it was all right to go ahead. Barnhouse stated to them in substance that it was all right to go that night. When the four reached the home of the deceased, Ellison, Woolery, Huff and Henry Morefield took their revolvers and went to the house. Appellant remained in the car, which was parked by the roadside in front of the home. It was then about dark. In response to a call by these men, Rondo Ellison went to the door and was asked to get them a drink. Ellison went to the kitchen and brought some water. After the three had taken a drink, someone, either Woolery or Huff, said, "stick them up", or words of that substance. Two shots were fired immediately thereafter. One struck Rondo Ellison in the head killing him instantly. The other bullet struck Henry Morefield producing instant death. Thereupon Huff, Woolery and appellant fled. The guns which they had were cast away and later found along the roadside. Beside the body of Henry Morefield was found a .22 revolver. A .38 revolver with one discharged cartridge was found beside the body of Ellison. Ellison had been shot with a German luger revolver. Woolery testified that he had the luger weapon when they left the car, but that he exchanged guns with Huff before they reached the home. What occurred at the home of the Ellisons we learn from the evidence given by Rondo Ellison's mother and Woolery who testified for the State. Woolery further testified that he was a mechanic and lived in Camdenton; that appellant also lived there and operated a pool hall and slot machines; that appellant brought a car to him on July 9, and stated that he wanted it repaired because it would be needed that evening; that Henry Morefield, brother of appellant, had left guns at the home of the witness which were to be used on this criminal adventure. The purpose of the trip was to get some money. Woolery also testified that on the return trip to Camdenton appellant stopped at Lebanon stating that he was going to fix his alibi. Later the men left the State and appellant was arrested in Arkansas. After his arrest, as per the evidence of the officers and a highway patrolman, he made a number of statements admitting that he drove the car to the home of Ellison and that he was a party to the crime. Appellant's defense was an alibi in support of which he introduced substantial evidence by witnesses living at Lebanon and others living in Camdenton.

■ It is apparent from the above statement that appellant's contention, that the State failed to adduce sufficient evidence to sustain the charge of murder in the first degree, must be overruled. The object of appellant and his three companions was to get money. The actions and conduct on their part show beyond doubt that robbery by means of firearms was the method agreed upon to accomplish their purpose. The fact that appellant did not accompany his three companions to the home of the deceased did not absolve him from guilt if robbery was the purpose of their mission. That that was their purpose is the only inference that can be drawn from the evidence. It is well settled that if a homicide is committed in an attempt to perpetrate a robbery the offense is murder in the first degree. [Sec. 3982, R. S. 1929, Mo. Stat. Ann., p. 2778. State v. Nasello, 325 Mo. 442, 30 S. W. (2d) 132, l. c. 138 (14, 15); State v. Messino, 325 Mo. 743, 30 S. W. (2d) 750, l. c. 759 (11, 12).]

■ Appellant urges that an instruction on murder in the second degree should have been given because the evidence justified a finding that appellant and his companions had only conspired to commit larceny. This is based upon the statement made by Woolery that the parties had agreed to get money. It is our opinion that the evidence does not justify such an inference. The parties armed themselves with firearms, went to the home of deceased, called him and asked for a drink, then gave a command to stick them up. The shooting followed. Such conduct is that of robbers and inconsistent with any theory of larceny. Appellant, during this time, was sitting in a car on the road in front of the house. He well knew that his companions took revolvers with them and that they went to the house for the purpose of getting money. From the facts proven we must conclude that robbery and not larceny was the motive of appellant and his companions. The trial court, therefore, did not err in failing to instruct on murder in the second degree.

■ Appellant next complains of Instruction No. 1, wherein the court defined murder in the first degree as follows:

"First. Murder in the first degree is the killing of a human being wilfully, deliberately, premeditatedly and with malice aforethought, or any homicide committed in the perpetration or attempt to perpetrate any robbery, or other felonies."

Appellant insists that this definition gave the jury a roving commission to find appellant guilty of murder in the first degree if they believed he had entered into a conspiracy to perpetrate a crime other than robbery. By the instruction quoted, the trial court merely defined murder in the first degree as an abstract proposition of law as found in the statute, Section 3982, supra. And, since robbery was the crime involved, the instruction referred to the other offenses mentioned in the statute as other felonies. The term "other felonies," of course, included any felony not mentioned in the stat-

ute. It would have been better to have omitted the words "or other felonies." We are of the opinion that these words, found only in the instruction defining murder in the first degree, did not mislead the jury. This, because there was no evidence of any other felonies. And furthermore other instructions given by the court informed the jury in no uncertain terms that they could not convict appellant unless they found beyond a reasonable doubt that he was a party to a conspiracy to commit robbery and that Ellison was shot while the conspirators were attempting to commit robbery. Note Instruction No. 7, which reads as follows:

"The Court instructs the jury that before you can convict the defendant you must find and believe from all the facts and circumstances in evidence and beyond a reasonable doubt that the defendant, Dennis Morefield, conspired, combined, agreed and confederated with the other parties mentioned in evidence to rob the Ellison Home, and that said Rondo Ellison was killed by one of the said parties to said conspiracy in an attempted robbery, and if you do not so find the above facts to be true, you will find the *the* defendant not guilty."

Other instructions on the same theory were given. We therefore hold that appellant was not prejudiced by the error in the definition of murder in the first degree.

■ Appellant also contends that the trial court should have excluded evidence given by the officers concerning admissions of guilt made by appellant while he was in their custody. We have carefully examined the record and find that no objection was made to this evidence. We therefore have nothing before us for review upon this point.

■ Next it is urged that the trial court erred in permitting Clifford Woolery to testify for the State because this witness was also charged with the murder of Ellison. The prosecuting attorney filed a separate information against appellant. It was therefore permissible to admit the evidence of Woolery. The rule that one co-indictee is incompetent to testify against the other, State v. McGray, 309 Mo. 59, 273 S. W. 1055, does not apply where they are charged in separate indictments or informations. [State v. Lackmann, 12 S. W. (2d) 424, l. c. 425 (1); State v. Link, 318 Mo. 1179, 3 S. W. (2d) 369, l. c. 370 (2).]

■ Appellant in various ways sought to have the prosecution against him abated. We will briefly consider a number of these. It is urged that since the affidavit filed in the justice court jointly charged the four individuals above named as having committed the murder, that therefore the prosecuting attorney did not have authority to file a separate information against each of them. Appellant has not cited us any authority in support of his contention. We hold that it was within the power of the prosecuting attorney to

jointly charge all four in one information, but that it was not mandatory for him to do so.

Again appellant urges that the complaint filed in the justice court was not sworn to before the justice of the peace. It was in evidence that the prosecuting attorney was not in the State at the time the proceedings for the arrest of appellant were instituted in the justice court. The prosecuting attorney, however, testified that upon his return he signed a complaint before the justice of the peace and was sworn thereto; that the complaint offered in evidence was the complaint that he had signed before the justice. The trial court heard evidence upon this motion of appellant and ruled the point against him. This ruling is supported by substantial evidence and we are not authorized to overturn it.

Appellant also urges that the Circuit Court of Ozark County, Missouri, did not acquire jurisdiction of the case because the circuit clerk of Douglas County did not transmit to the circuit clerk of Ozark County a certified copy of the proceedings had in Douglas County. The record before us contains a full transcript of the proceedings duly certified by the clerk of the Circuit Court of Douglas County. Appellant does not question the correctness of the papers. It was shown in evidence, however, that the clerk had certified to the original papers and not to a copy thereof. The purpose of the statute, Section 3640, Revised Statutes 1929 (Mo. Stat. Ann., 3200), in requiring a clerk to transmit a certified copy of the proceedings, in a change of venue case, to the county where the case has been transferred, is to insure the court acquiring jurisdiction and the parties to the suit that the papers are authentic. The mere fact that the clerk certified to the original papers was an irregularity not fatal to the prosecution in the new jurisdiction. Neither does such an irregularity affect the jurisdiction of the court. [State v. Rodman, 173 Mo. 681, 73 S. W. 605. See, also, 16 C. J. 218, sec. 332.]

Two assignments of error remain which were mentioned in the brief of appellant. Before the jury was sworn appellant asked for a list of jurors. It developed that one of defendant's attorneys had had a list of the regular panel for some days. Additional jurors were called to make up the full panel of thirty. A number were disqualified and other jurors were selected. The trial court permitted an unusually elaborate examination of jurors on the *voir dire*. The record fails to disclose wherein appellant was prejudiced by not having a complete list of the jurors. In his brief appellant does not attempt to point out wherein he was prejudiced. Another complaint is that one of defendant's witnesses was absent and appellant asked the court, when the trial was drawing to a close, to postpone further hearing of the case until the next day in order to permit this witness to testify. This occurred about four o'clock in the afternoon. The trial court advised that if the witness appeared the case

would be reopened and the witness could testify. Appellant stated that this witness would give evidence in support of his alibi defense, that he lived in Camdenton. A number of witnesses testified in support of this phase of the alibi and the evidence of this witness would have been cumulative. No further mention was made with reference to this witness. The jury did not return a verdict until sometime the following day. The witness evidently did not appear and no attachment was requested. The point is without merit.

The record does not contain any reversible error. The judgment is affirmed. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.