THE STATE v. THEODORE PRIESMEYER, LOUIS PRIESMEYER, JR., LIZZIE PRIESMEYER and ALICE PRIESMEYER, Appellants.—37 S. W. (2d) 425.

Division Two, March 25, 1931.

336

*E. E. Hairgrove* for appellants.

*Stratton Shartel,* Attorney-General, and *Ray Weightman,* Assistant Attorney-General, for respondent.

WHITE, P. J.—The appeal is from a judgment upon conviction of each of the defendants of burglary and larceny, the sentence being two years for each offense for each defendant.

They were charged with breaking into a building of Louis Knoop at Cole Camp in Benton County, March 12, 1929, and stealing thirty-four chickens of the value of fifty dollars. Upon change of venue the trial was had in Bates County.

Theodore Priesmeyer and Louis Priesmeyer were the sons of Lizzie Priesmeyer, and Alice Priesmeyer was the wife of Louis. The evidence for the State tends to show that all those members of the Priesmeyer family were engaged more or less in the business of stealing and selling chickens.

Mr. Knoop, the night of March 12, 1929, locked his chickens in his chickenhouse, and the next morning he found the lock torn off the door and thirty-four of his single-comb Rhode Island Reds were gone. Later he visited the Farmers' Exchange Poultry House in Sedalia, where he found some chickens that resembled his. He took them home, but they did not demean themselves in a way to convince him that they were his and he took them back. Later he got five other chickens from the Producers' Produce Company of Sedalia and upon sufficient test he concluded that four of them were his. He identified them partly by bands on their legs. Chickens were sold by the defendants to the Produce Company March 18th. Again March 21, 1929, Alice Priesmeyer and two men who were not identified sold a bunch of chickens to the Produce Company which included the four chickens Mr. Knoop claimed. His identification

was not very positive, but he thought they were his. They behaved as if they were at home. His test left the jury to infer whether it was sufficient. There was evidence to show movements of a six-cylinder Chevrolet sedan belonging to Louis Priesmeyer and a four-cylinder Chevrolet sedan owned by Theodore Priesmeyer. A Chevrolet sedan was seen parked about a quarter of a mile from Knoop's house on the night of March 12th. Various movements of those Chevrolet cars were testified to by several witnesses, indicating an opportunity for defendants to commit the crime. Theodore Priesmeyer was arrested in Kansas City at some time not definitely stated after the theft. He was then in possession of considerable money and was on his way further west. Three letters were found on him addressed to his mother and brother which contained numerous statements seeming to refer to the stealing of chickens by them. He signed his name Frank Brown. The defendants offered evidence to show that there was a Frank Brown, and the State offered evidence to show there was no such person.

While the evidence is weak we think that a submissible case was made out.

I. One error assigned is the admission of statements made in the presence of several witnesses by one Arl Richardson who, the State claims, was under arrest at the time for the crime. It is asserted by the State that the theft of the Knoop chickens was part of a general enterprise and that Arl Richardson was a member, with the Priesmeyers, of the conspiracy. Arl Richardson was arrested March 26th by the sheriff as "being accessory to the crime." He was not charged in the same complaint with the Priesmeyers and the record does not show that any formal charge was filed against him. After his arrest four witnesses testified to statements he made, some of them designating it a confession.

Louis Knoop testifying was asked if Richardson told him anything about "who took the chickens." The witness answered that he did, fixing no time at which the conversation took place except that Richardson was under arrest. He said Richardson told him that he, Richardson, sat in the car while the two Priesmeyer boys went to the chicken house, that one of them got the chickens out, the other one stood guard, and then they both carried the chickens with them; they had the car sitting about a quarter of a mile north of the barn.

J. W. Allen, the sheriff, testified to a similar statement of Richardson describing in detail how they got the chickens out of the hen house. They were the Louis Knoop chickens.

H. C. Ferguson, deputy sheriff, testified to hearing Arl Richardson explain in pretty much the same way how the chickens were taken. How Richardson sat in the car while Ted and Louis went

to get the Knoop chickens. As he told it, Alice Priesmeyer was with the men at the time of the theft.

Herman Reimenschnitter gave similar testimony.

The chickens had been stolen and disposed of many days before. The chickens which Knoop identified were sold by the Priesmeyers March 21st. Richardson was arrested March 26th. How long after his arrest these conversations took place the record does not show.

The rule that the declarations of a co-conspirator made after the enterprise has been accomplished and merely narrative as to past occurrences is inadmissible against co-conspirators. [State v. Buckley, 318 Mo. 25; State v. Forshee, 199 Mo. 145; State v. Strait, 279 S. W. 109; 16 C. J. 661-2.]

If a conspiracy continues for any purpose such as disposing of the loot, the effecting of an escape, the concealing of the crime, the admissions of one conspirator would be admissible against another. But nothing of the kind is shown in these conversations testified to. It was a mere narrative of what had been done after the crime had been accomplished and the perpetrators scattered. The statements were not made in furtherance of the alleged common design. [State v. Ferrell, 246 Mo. 322; State v. Roberts, 201 Mo. 702.]

Besides, there was no evidence that Arl Richardson was a party to the conspiracy aside from those hearsay statements of his. He was not shown to have been with the defendants when they sold the chickens claimed by Knoop, nor with them in any of their maneuvers. He was not present at the trial. Some of the witnesses stated that he had disappeared; others said that he had repudiated those statements. The State claims it was conclusively proven that Richardson was an inseparable companion of the defendants. The record shows only that he was often seen with Louis Priesmeyer, that he stayed at Louis Priesmeyer's place. In what capacity the evidence does not show. He may have been a hired man or a lodger. There is nothing to show where his home was except that he stayed with Louis Priesmeyer and was seen frequently with the Priesmeyers.

This evidence of his statements would have been admissible against him if he had been one of the defendants, but it was not admissible against the defendants for the reasons mentioned and in the absence of a showing that he was one of the conspirators.

II. The sheriff testified that he arrested Louis Priesmeyer and Arl Richardson at the same time. That same evening after the arrest he heard Alice Priesmeyer say to Richardson: "Arl, you don't know anything." It was further shown that the Priesmeyers' who apparently were out on bail visited Richardson a number of times while he was in jail, and some of them urged Richardson to keep quiet and not to say anything because "they" didn't "have

anything on him;" not to sign anything, that people had been sent to the penitentiary for signing papers. This evidence was properly admitted against the defendants for it tended to show that the conspiracy was still in force for the purpose of concealing the crime. But it does not show that Richardson was a party to the conspiracy, so as to make his hearsay statements admissible. There is nothing in any of the statements or suggestions made to Richardson in the presence of these witnesses which implicated him. He was told that he "did not know anything;" that "they had nothing on him;" and he was admonished to keep quiet. All that can be gathered from this is that the defendants knew that Richardson knew things which would tend to prove them guilty and they wanted him to keep quiet. We find nothing in any of these statements made to him, nor in any reply of his, to indicate that he was a party to defendant's crimes, nor that it was necessary for him to keep quiet in order to escape conviction himself. Richardson said only that he would not tell on them. To the suggestion that he sign no papers the record does not show that he made any reply. There was nothing in anything he said to defendants, nor in his conduct at the time, to indicate an admission that he was guilty with them. There is nothing in the occurrence to make the "confessions" mentioned in Paragraph I admissible against the defendants.

III. Sarah Moon testified that she, with Louis Priesmeyer and Arl Richardson, went to Cole Camp one night and on the way back they stole four chickens apiece; that they got some more from another place; that they sold the chickens. The time of this exploit is not stated, nor does it indicate whose chickens were stolen. Nor is there anything to connect it with a general conspiracy of the Priesmeyers. It was an isolated and individual occurrence—Sarah Moon, Arl Richardson and Louis Priesmeyer. This evidence is far from indicating that Arl Richardson was a part of the Priesmeyer conspiracy, showing it was another enterprise by him with other individuals only one of whom was a Priesmeyer. Mrs. Moon was considerably shaken in her cross-examination. This evidence was improperly admitted.

Evidence of other chicken thefts by the Priesmeyers, in pursuance of this common design and chicken-stealing business, was properly admitted.

There was considerable other evidence which the appellants claim was inadmissible. We do not find any errors in respect to it which would be likely to occur at another trial.

The judgment is reversed and the cause remanded. All concur.