STATE of Missouri, Respondent,

v.

Kenneth W. FINLEY, a/k/a Odell
Nelson, Appellant.

No. KCD30384.

Missouri Court of Appeals,
Western District.

Oct. 1, 1979.

Joe L. Anderson, Independence, for appellant.

John D. Ashcroft, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before WASSERSTROM, C. J., and WELBORN and BARNES, Special Judges.

WASSERSTROM, Chief Judge.

Defendant was convicted in 1974 of first degree robbery, and that conviction was affirmed by this court in 1975 in *State v. Nelson*, 526 S.W.2d 56 (Mo.App.1975). That appellate review was, however, abbreviated because this court was then under the belief that defendant's motion for new trial had not been filed timely in the trial court, and the review was therefore confined to those few matters specified in Rule 28.02.

Thereafter, in 1978, defendant filed a motion under Rule 27.26 to set aside the conviction because of ineffective assistance of counsel. Upon the hearing of that motion, the trial court found that the time for filing motion for new trial had been extended immediately after the original trial, but that erroneously no record was made of that extension and the fact of the extension was not reflected in the transcript on appeal which had been filed in this court. The trial court therefore granted the motion to set aside the judgment and conviction and permitted defendant to file a new motion for new trial. Pursuant to that permission, defendant did file his motion for new trial, a hearing was held thereon, after which the motion was overruled and a new sentence was pronounced and judgment entered. From that judgment, defendant pursues the present appeal.

The pertinent facts of the underlying crime are as follows. About 10:30 p. m. on April 24, 1973, Church's Fried Chicken at 4001 Troost in Kansas City, Missouri, was held up by three black men. Two of the men, one holding a gun, demanded the money out of one cash register manned by Ronald McDonald. The third man, described by McDonald as being "tall, dark and a little skinny" and who wore a bandage on his left hand, demanded the money from another employee out of a second register. The money so obtained was approximately $50 from each register.

As soon as the three robbers left, McDonald called the police, who arrived at the scene while McDonald was in the process of hanging up the telephone. McDonald described the robbers, and a notice of the robbery with a description of the robbers was dispatched over the police radio.

Officer Washington was in a police car in the close vicinity, and he started cruising the area with his lights off. He was hailed by an unidentified informer from whom he received a tip, and Washington immediately drove to an apartment building at 4010 Forest, approximately one block from the scene of the robbery. Other police officers promptly answered his call for assistance, and the group entered the apartment building. As they walked down the first floor corridor, they overheard a conversation issuing behind the door of one of the apartments at the end of the hallway. The voices were heard to say: "They are looking at your car; but don't worry, they can't connect you with this. * * * They are out there looking at your car. * * * Well, why don't you go and move it? * * They're not going to catch us; they are looking for three black dudes with dark glasses. * * * Bitch, if you snitch, I'll kill you." One of the police officers recognized one of the voices as being that of defendant, but the officer was not able to say just what part of the foregoing conversation was uttered by defendant's voice. The entire time which elapsed between the commission of the robbery and the overhearing of the conversation just stated was not more than eight minutes.

Just as soon as the officers heard the conversation related, they broke down the

door to the apartment and saw inside six or seven men, one woman and a child. All of the men were arrested and searched. Upon the defendant, who wore a bandage on his left hand, the police found $51.75 in currency and coins.

The original indictment charged the commission of robbery against defendant under the name "Odell Nelson," and the caption of the indictment referred to "Odell Nelson, a/k/a Kenneth W. Finley." Before trial the state requested leave to file an amended information and pursuant to leave granted by the court, did file an amended information against defendant as "Kenneth W. Finley, a/k/a Odell Nelson."

■ Defendant's first Point Relied On complains of the police officers being allowed to testify as to the conversation heard through the locked door of the apartment. Defendant's Point states that "none of the remarks were attributed by any evidence to the appellant" and "[t]he conversation was, therefore, hearsay, not subject to any valid exception to the hearsay rule." That Point has no merit. The conversation was not offered to prove the truth of any matter stated therein, and the statements were therefore not subject to objection as hearsay. *Still v. Travelers Indemnity Company*, 374 S.W.2d 95 (Mo.1964); *Bond v. Wabash Railroad Company*, 363 S.W.2d 1 (Mo.1962).

In the argument portion of his brief, defendant attempts to change his Point I by disclaiming his hearsay objection and substituting instead an objection based upon relevancy. In this connection, defendant's brief states:

> "In counsel's estimation, the only conceivable probative value of such evidence would be to show the guilty knowledge or preparations for flight of the *declarant.* Those issues are relevant but not to this Appellant since he was not identified as the declarant. The issue is not one of hearsay or exception thereto but of *relevance.* Purporting to show the state of mind of the declarant, the statement says nothing about whether the Appellant said it, believed it or concurred in it." (emphasis in the brief)

■ This attempt to depart from the Point Relied On violates Rule 84.04, and the quoted portion of defendant's argument therefore is not properly before this court for consideration. *State v. Flynn*, 541 S.W.2d 344, 348 (Mo.App.1976); *State v. Tschirner*, 504 S.W.2d 302, 306 (Mo.App. 1974); *Nutz v. Shepherd*, 490 S.W.2d 366, 372 (Mo.App.1973). However, reviewing the argument as a matter of grace, we find it without merit. The parties holding the overheard conversation were all participants in a continuing conspiracy, at a time only eight minutes after the robbery, while they were still actively seeking to escape and elude the police. The statements made by any one of the conspirators are admissible against all. *State v. Hill*, 352 Mo. 895, 179 S.W.2d 712, 716 (1944).

■ Defendant's next Point complains of the amended information, in that it referred to a pseudonym which he says had the effect of inflaming the jury and creating an inference of criminal design. Such prejudicial effect was impossible in this case because there was no evidence indicating that the amended information ever came to the attention of the jury.

■ Defendant attempts to expand his Point II in the argument portion of his brief by complaining of certain testimony which referred to defendant's alias, "Odell Nelson." This attempt to go beyond the Point stated is again a violation of Rule 84.04. Even if it could be considered, the additional argument is without merit. A showing that an accused person used an alias is not per se prejudicial, and where a reference to an alias creeps into the proceedings, the situation on appeal will be controlled by a concrete appraisal of the significance of the incident in relation to the processes of the trial as a whole. *State v. Loston*, 234 S.W.2d 535, 540 (Mo.1950). A concrete appraisal of the whole record here leads to the firm conviction that there was no prejudicial error.

■ Defendant's third Point challenges the admission of the evidence concerning

the money found in his possession. He claims that this evidence was obtained by an illegal search and seizure.

There is no question but that the currency and coin were seized as a result of a search incident to an arrest. Defendant's complaint rests on the contention that the arrest was without warrant and was not based upon probable cause.

The requirements of probable cause in this connection are authoritatively set forth in *State v. Wiley*, 522 S.W.2d 281, 287 (Mo. banc 1975). It is there stated:

"Of course, all the information in the possession of the officers and all reasonable inferences therefrom are pertinent to determine probable cause. Whether there is justification for probable cause to arrest without warrant must be determined by practical considerations of everyday life on which reasonable men act and is not to be determined by hindsight by legal technicians. *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). The determination of probable cause depends upon the particular facts and circumstances of the individual case and no ready 'litmus paper test' can be applied."

The court also went on to specifically discuss the treatment to be accorded an anonymous informer's tip. In that connection the opinion holds in part as follows:

"To hold true to the principles of our Federal and State Constitutions, an arrest, invasion and search and seizure upon a mere tip of an informer cannot be countenanced. On the other hand, to deny law enforcement officers the power to arrest, search and seize based upon such information may result in serious consequences and the inability of such officers to ferret out criminal activity in the community and to control dangerous substances. A balance must therefore be struck. The proper test is that an officer may rely on information received through an informant, rather than on direct observation 'so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge' and there is a substantial basis for crediting the hearsay."

The standards set forth in *Wiley* applied to the present record show the existence of probable cause to arrest defendant. To the anonymous tip received by Officer Washington, there must be added the fact that after entering the apartment building indicated by the informant, the officers heard incriminating conversation which corroborated the tip and moreover in and of itself indicated participation in the crime from which the participants were at that very time trying to hide themselves from discovery. Still further, when the officers entered the apartment they could physically observe defendant, whose voice they had already identified, and who fit the description which had been given to the police by McDonald.

There being no error, the judgment is affirmed.

All concur.