STATE of Missouri, Respondent,

v.

Chester Nathaniel CORNMAN,
Defendant-Appellant.

No. 66444.

Supreme Court of Missouri,
En Banc.

Aug. 7, 1985.

Peter Sterling, Asst. Public Defender, Rolla, for defendant-appellant.

William L. Webster, Atty. Gen., Bruce Farmer, Gary Gardner, Asst. Attys. Gen., Jefferson City, for respondent.

RENDLEN, Judge.

Found guilty by a jury of conspiracy to commit murder, § 564.016,[1] (Count I), and of assault in the first degree, § 565.050, (Count II), defendant's punishment was assessed at 10 years for the conspiracy and 30 years for the assault with terms to run consecutively. After affirmance in the Southern District transfer was granted and we determine the cause as though on original appeal. Mo. Const., art. V, § 10.

Defendant was charged in Count I with conspiracy to commit murder by agreeing with others to kill Harrel D. "Red" Sims, business manager and secretary-treasurer of Laborers' Local 840 at Rolla. Count II charged assault for the shooting of Davis R. Haas, a neighbor of Sims. It is the State's theory that defendant, accompanied by a fellow conspirator, Jesse James Morgan, shot Haas, mistaking him for Sims.

Defendant insists that § 564.016.7[2] bars conviction and sentencing on both counts and that such conviction constitutes double jeopardy in violation of the Fifth Amendment to the United States Constitution. Additionally, defendant assigns several instructional errors, and complains of the admission of certain out-of-court state-

---

1. All statutory references are to RSMo 1978 unless otherwise indicated.

2. Section 564.016.7 provides:

A person may not be charged, convicted or sentenced *on the basis of the same course of conduct* of *both* the actual commission of *an* offense and a conspiracy to commit *that* offense. (Emphasis added.)

ments by Morgan and another alleged conspirator, Michael Lewis Carney.

## I.

Haas was shot October 28, 1981, near his home in rural Phelps County. The evidence, viewed in the light most favorable to the verdicts, *State v. Wood,* 596 S.W.2d 394, 400 (Mo. banc), *cert. denied,* 449 U.S. 876, 101 S.Ct. 221, 66 L.Ed.2d 98 (1980), demonstrates that about a week before the shooting Morgan, with defendant present, accepted Carney's offer of $5,000 to kill Red Sims "to take over the Laborers Union." At trial, the State's chief witness, William Stoney, testified that defendant said nothing when the deal was struck. However, other evidence indicated that somewhat later and about two days before the shooting, defendant and Morgan broke into a Mountain View, Missouri home and took a semiautomatic rifle. On the day before the shooting, defendant went to the Laborers' Union Hall in Rolla asking for Sims and learned from the secretary that Sims probably would not be there that day. While defendant was in the Union Hall making this inquiry, a person was observed waiting for him outside in a green Torino. Morgan and defendant had escaped from jail earlier that year and in early October, using an alias, Morgan had purchased a green 1973 Ford 2–door Gran Torino automobile. Defendant was with Morgan when he purchased the car and the twosome during the period following their escape from jail were known to have driven this vehicle while living with an ex-convict, Steven McGowan.

On the morning of the shooting, a dark green Gran Torino was seen on the right side of Spring Hill Road, facing Highway 72, outside Rolla. Identified by a passing motorist, Morgan was seen at the rear of the vehicle "as if getting something out of the trunk."

When Haas, driving a white 1981 Chevrolet pickup, reached Highway 72 from an intersecting highway that fateful morning he stopped and noticed a green Torino facing him across the highway on Spring Hill Road. Starting across the highway Haas heard a shot and was struck by glass fragments on his face. Bleeding from his mouth and neck Haas was struck in the chest by a second shot. He managed to drive across the highway and put his truck in "park." As he did so two more shots came through the windshield, blowing out the back window. He opened the passenger side door in time to see the Torino "fishtailing and leaving the scene." Haas struggled from the truck and saw Sims get out of his pickup and come across the highway. He told Sims he had been shot and then collapsed.

Sims, whose home is "straight across" county road 163 from Haas' home, left his home that morning, driving a white 1979 Ford pickup. Heading toward Highway 72, he saw Haas' pickup about 100 to 150 yards ahead, also traveling toward Highway 72. Sims, who saw Haas stop after crossing the intersection, testified that Haas left his pickup and "started staggering and looked up and seen me and hollered at me." Haas, whose lung collapsed, remained hospitalized 11 days and absent "heroic measures" would have died.

The Missouri State Highway Patrol lifted Morgan's thumbprint from the abandoned Torino and thereafter entered an agreement with Stoney to transmit a conversation with Carney to the Patrol via a concealed body microphone and transmitter. The recorded conversation revealed that Carney asked Stoney to stay away for a month and the two of them agreed to say they had never talked to defendant and did not know him. In this connection Stoney and Carney seemed to know that defendant, when arrested, had expressed concern to the police that his sister might be implicated and these men were apparently apprehensive as to what he might say. Carney stated "it's got to be finished."

Defendant complains that the trial court erred in admitting into evidence (1) the recorded Stoney-Carney conversation, (2) Stoney's testimony regarding the conversation at which Carney offered $5,000 to kill Sims, and (3) testimony by McGowan re-

garding a conversation between himself and Morgan during which Morgan said that defendant had done the shooting.

Defendant has preserved nothing for appellate review regarding McGowan's testimony or Stoney's rendition of the conversation during which Carney offered $5,000 for the shooting. Because no objection was made during trial regarding these hearsay statements, the point is denied. *State v. Griffin*, 662 S.W.2d 854, 859 (Mo. banc 1983); *State v. Franco*, 544 S.W.2d 533, 537 (Mo. banc 1976), *cert. denied*, 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977).

■ Defendant argues that the tape-recorded Stoney-Carney conversation is inadmissible because there was no independent proof that he was involved in the conspiracy and, even if such conspiracy existed, it had terminated by the time of that conversation. We agree that before a hearsay statement of one conspirator may be introduced in evidence against a coconspirator, there must be a showing, by evidence independent of the statement, of the existence of the conspiracy. *Glover v. State*, 528 S.W.2d 507, 509 (Mo.App.1975). However, when a conspiracy has been independently shown, statements or declarations of a conspirator, made in the furtherance of the object of such unlawful combination, are admissible against another conspirator not present when such statements or declarations were made. *State v. Garton*, 371 S.W.2d 283, 287–88 (Mo.1963); *State v. McCollum*, 598 S.W.2d 198, 200 (Mo.App.1980). The evidence required to show the existence of a conspiracy for the purpose of admitting into evidence a statement made by a coconspirator differs from the evidence required to convict someone of the crime of conspiracy. The former requires only a showing of an agreement between the defendant and the declarant and a statement in furtherance of their

scheme, while the latter requires proof of an overt act performed by a conspirator in pursuance of the conspiracy. *State v. Fuhr*, 660 S.W.2d 443, 448 (Mo.App.1983).

■ The only references to defendant during the taped conversation that are arguably incriminatory were made by Carney.[3] In our opinion, there was sufficient evidence, independent of what Carney said, to support a finding that there was a conspiracy to kill Sims, and that defendant, Morgan and Carney were three of the conspirators. Such evidence includes the following:

Defendant and Morgan escaped the St. Francois County jail together, arrived together at McGowan's house while at large, and bought the Torino together. Defendant was present when Morgan said he would accept Carney's offer of $5,000 to kill Sims. Defendant was with Morgan when Stoney saw a rifle with a scope in the trunk of their car. It is inferable that this was the rifle that shot Haas, which was stolen before the shooting. Approximately 24 hours before the shooting, when defendant went to the Union Hall seeking Sims, Morgan's Torino was outside with "someone" in the driver's seat and the motor running. Defendant and Morgan left McGowan's house the evening of the date Haas was shot, never to return. On November 10, 1981, when defendant was "booked," he carried two identification cards bearing the name used by Morgan in buying the Torino. During booking, defendant asked, "[w]hat would it take to get the girls out of this?" Later, in response to a comment that he had gotten himself into trouble and had not been paid, defendant remarked, "[w]hat makes you think I didn't get paid?" We reject defendant's argument that there was no independent proof that he conspired with others to kill Sims.

**3.** Among the references to defendant are the following: Carney stated—somewhat cryptically—that word had to reach defendant Cornman that "they don't have the weapon" and "they don't have an eyewitness" but the authorities were "trying to lay something back on him" because he was an escapee in the area. Carney told Stoney "when they got Cornman," he or "one of them broads" made a statement that Morgan would not be taken alive. Carney instructed Stoney if he were asked "[D]id I ever talk to Cornman?" that he should answer "No."

■ The second element of the assignment of error is that even if there were a conspiracy to kill Sims, it terminated before the taped conversation occurred.

The fact that declarations are made by a conspirator after the crime has been consummated does not necessarily make such declarations inadmissible. *State v. Hill*, 352 Mo. 895, 179 S.W.2d 712, 716 (1944); *State v. Smith*, 631 S.W.2d 353, 360 (Mo. App.1982). If a conspiracy continues for a purpose such as concealing the crime or to prevent or defeat prosecution, the admissions of one coconspirator are admissible against the other, even if made after the completion of the crime which had been the objective of the conspiracy. *State v. Priesmeyer*, 327 Mo. 335, 37 S.W.2d 425, 427 (1931); *State v. Smith*, 631 S.W.2d at 360.

■ Here, the crime that the conspirators meant to commit—the murder of Sims—did not occur. Comments by Carney during the Stoney-Carney conversation indicated he still intended that Sims be killed and a principal subject of the conversation was how to conceal the conspiracy and elude prosecution.

Carney began the conversation by telling Stoney, "[e]verybody kept their mouth shut." He added there would be no problem if "everybody stays cool." Carney gave Stoney the names of two persons he planned to implicate in order to conceal his involvement and mislead the authorities. Carney asked Stoney, "[n]ow will other guys stay cool?" Carney realized he would have to admit to investigators that he knew Stoney, and he told Stoney how he intended to explain that to the authorities. He also warned Stoney that the investigators wanted to catch them together, and suggested that Stoney avoid him for about a month. Carney said word should be sent to defendant that the authorities did not have the weapon or an eyewitness. He also asked Stoney what the authorities had said to him when he was picked up for investigation, whether anyone knew he was behind the shooting and he cautioned Stoney to be careful when using the phones. Carney

also expressed the belief that Morgan would not be taken alive.

The evident purpose of Carney's statements to Stoney was to foil the investigators and camouflage the conspiracy. The trial court did not err by receiving into evidence Carney's references to defendant in the conversation. *State v. Priesmeyer*, 37 S.W.2d at 427 (1931); *State v. Smith*, 631 S.W.2d at 360 (1982).

**II.**

■ There is no prior Missouri case law construing § 564.016.7 and we now address defendant's claim that the section bars conviction and sentencing for both the conspiracy to murder Sims and the assault on Haas.

As a general rule, a conspiracy to commit a crime, and the crime that is the object of the conspiracy, are separate and distinct offenses, and a defendant may be convicted of, and sentenced for, each offense. 1 Torcia, Wharton's Criminal Law § 24 at 113 (14th ed.1978); Lafave & Scott, Handbook on Criminal Law, § 62 at 494 (1972); *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); *Cardarella v. United States*, 375 F.2d 222 (8th Cir.), *cert. denied*, 389 U.S. 882, 88 S.Ct. 129, 19 L.Ed.2d 176 (1967). Missouri, however, through the enactment of § 564.016.7 by the General Assembly, has a stated policy that a person shall not be convicted or sentenced on the basis of *the same course of conduct* for *both* the actual commission of an offense and a conspiracy to commit *that* offense. *See State v. Tierney*, 584 S.W.2d 618, 624–5 (Mo.App.1979). This policy originated in 1973 in an amendment to § 556.130, RSMo 1969. The amendment, Laws 1973–74, p. 502, codified as § 556.-130.2, RSMo Supp.1975, provided, in pertinent part:

> [N]o person may subsequently be charged or tried for an attempt to commit an unlawful act or the commission of an unlawful act after having first been convicted or acquitted of a conspiracy to commit the same act.

Section 556.130, RSMo Supp.1975, was supplanted by § 564.016, a part of The Criminal Code, Laws 1977, pp. 662–718, effective January 1, 1979, which abrogated the common law rule on duplicate prosecutions. *See State v. Tierney*, 584 S.W.2d at 624–25, n. 6. It is said in *Tierney* that the statutory bar to concurrent and subsequent prosecutions for the inchoate as well as the completed act does not rest on a premise of included offense, but on a public policy to avoid the common law practice which vexes an accused twice for the conduct. *Id.* at 625.

■ The Comment to 1973 Proposed Code, 40 V.A.M.S. p. 426, 433 succinctly explains that § 564.016.7 is designed to prohibit the State only from convicting a person for conspiracy where there has been a conviction for the substantive offense which was the target of the conspiracy. Pertinent portions of the Comment are as follows:

Subsection 7 is based on Michigan Revised Code § 1020(2) (Final Draft 1967).[4] It basically provides for the merger of the conspiracy into the conviction for the substantive offense *that was the target of the conspiracy. Nothing in this subsection is designed to prohibit the state from charging both conspiracy and a substantive offense and proving both.* It is [only] intended to prevent a person's being charged, convicted or sentenced for conspiracy when he has been charged, convicted or sentenced for the substantive offense which *was the target of the conspiracy.* (Emphasis added.)

This comment to subsection 7 is rendered even more instructive when read with knowledge of the confines imposed by the Code on the scope of a conspiracy. The comment to subsections 1, 2 and 3 of § 564.016 announces:

By requiring a firm purpose to promote or facilitate the commission of a *specific* offense, the scope of the conspiratorial agreement and the scope of the individual conspirator's liability are *limited* to those offenses which it (the conspiracy) and he (the conspirator) *actually intended to commit or facilitate.*

40 V.A.M.S. p. 427 (emphasis added). It follows that had the victim of the shooting been Sims, as the conspirators specifically intended, rather than Haas, and had the wound been fatal, § 564.016.7 would have prevented the State from convicting and sentencing defendant for both the murder and the conspiracy to commit it.

We are mindful, however, that defendant's belief that Haas was Sims did not alter the character of the substantive crime that defendant committed, assault in the first degree—a crime not specifically intended by the conspiracy. So far as the law is concerned, the identity of the victim, in circumstances such as here, has no bearing on the offense actually committed—an offense different from that which was the object of the conspiracy.

In this case the purpose of the conspiracy was to kill a specific person; the would be killers attacked the wrong man. The objective of the conspiracy remained unfulfilled, and the danger of collective criminal activity continued as evidenced by Carney's tape-recorded remark to Stoney that the bungled killing of Sims must be carried out. He made this manifestly clear by stating "it's got to be finished." The target of the conspiracy was Sims. The objective was to kill him, not to commit a random murder, but to kill a specific individual to accomplish a particular goal, take-over

---

**4.** That section has become § 1025 of the current Michigan Revised Criminal Code. Section 1025, *Inchoate crimes; consummation of the object offense: multiple convictions* provides, in part:

\* \* \* \* \* \*

(2) A person may not be convicted on the basis of the same course of conduct of both the actual commission of an offense and any of the following:

(a) An attempt to commit that offense.

(b) An attempt to assist in the commission of the offense.

(c) Criminal solicitation of that offense.

(3) A person may not be convicted of more than one of the offenses defined in this chapter for a single course of conduct designed to commit or to culminate in the commission of the same offense.

\* \* \* \* \* \*

of Local 840. Shooting Haas did not serve that purpose. The object of the conspiracy was not achieved. Accordingly, we reject defendant's argument that under § 564.-016.7 he cannot be convicted and sentenced for both counts.[5]

### III.

■ Defendant's double jeopardy claim is advanced in reliance on *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Defendant claims there was only one offense because all the facts the State had to prove to convict him for the assault had to likewise be proved to establish the overt act required to convict him of the conspiracy.

Even if defendant's factual analysis were correct, and it is not,[6] under *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), the United States Supreme Court has made clear that the *Blockburger* rule would not be controlling and inescapably leads to rejection of defendant's double jeopardy claim. In *Hunter,* the United States Supreme Court put to rest the specious double jeopardy analyses advanced in *State v. Haggard,* 619 S.W.2d 44 (Mo. banc 1981), *Sours v. State,* 593 S.W.2d 208 (Mo. banc) (Sours I) *vacated and remanded,* 446 U.S. 962, 100 S.Ct. 2935, 64 L.Ed.2d 820 (1980) and *Sours v. State,* 603 S.W.2d 592 (Mo. banc 1980)

(Sours II) *cert. denied* 449 U.S. 1131, 101 S.Ct. 953, 67 L.Ed.2d 118 (1981). The Court made clear that under the circumstances here the doctrine only prevents the sentencing court from prescribing greater punishment than the legislature intended. Where in a multiple count case there is clear legislative intent as to punishment and the counts are presented in a *single trial* the *Blockburger* rule simply has no application. There is a clear legislative intent that a defendant may be convicted of conspiracy to commit a crime of murder (§ 564.016) and the crime of assault in the first degree. Accordingly, under *Hunter* there is no double jeopardy implication because our Legislature intended punishment for both. Further, as discussed above, the legislative intent to limit certain convictions and punishments under Subsection 7 of § 564.016 is specifically circumscribed and applies only to that situation where a single or the *same* course of conduct is shown for both the actual commission of an offense and a conspiracy to commit *that* offense. The referenced subsection of the statute does not prohibit conviction for conspiracy to commit the murder of Sims and for the assault in the first degree upon Haas.

### IV.

■ Defendant's final points include a challenge to the verdict director submitted

---

**5.** Our analysis is buttressed by the Model Penal Code, which was relied upon heavily in the drafting of § 564.016:

> The draft takes the view that conspiracy to commit an offense ... may consist merely of preparation to commit that offense.... [C]onviction of either [conspiracy or the completed offense] adequately deals with such conduct.... [T]he limitation of the draft is confined to the situation where the completed offense was the sole criminal objective of the conspiracy. Therefore, there may be a conviction of both a conspiracy and a completed offense committed pursuant to that conspiracy if the prosecution shows that the objective of the conspiracy was the commission of additional [we would add "or different"] offenses.

Section 1.08(1)(b), Comment (Tent. Draft No. 5, 1956).

**6.** Here, the State alleged, and presented proof of, three overt acts in pursuance of the conspiracy: acquiring weapons, stalking Sims, and shooting a person believed to be Sims. The verdict directing instruction on conspiracy

(MAI–Cr 2d 18.04.1) submitted all three acts. The verdict directing instruction on assault in the first degree (MAI–Cr 2d 19.02) required the jury to find, among other things, that defendant caused serious physical injury to Haas. The verdict directing instruction on conspiracy did *not* require a finding that defendant caused Haas serious physical injury.

It is thus evident that in order to find defendant guilty of assault in the first degree, the jury had to find an element that was *not* required in order to find defendant guilty of conspiracy, i.e., that defendant caused serious physical injury to Haas. It is similarly evident that in order to find defendant guilty of conspiracy, the jury had to find an element that was *not* required in order to find him guilty of first degree assault, i.e., that defendant agreed with others to murder Sims. Thus, if the *Blockburger* analysis were applicable today to the facts before us, and of course such is not the case, defendant's contention would nevertheless fail.

on conspiracy for failure to require a finding that he acted with a culpable mental state and a claim that MAI–Cr 2d 2.10 or 2.12 should have been submitted on each count.

The Notes on Use to the pertinent versions of MAI–Cr 2d 2.10 and 2.12 expressly precluded use of these instructions in connection with a conspiracy submission. Moreover, had MAI–Cr 2d 2.10 or 2.12 been submitted on the assault count, the State's burden would have been lessened. By narrowing the theory of guilt to active participation, defendant was advantaged, not prejudiced, and he cannot be heard to complain.

The verdict director submitted for the conspiracy faithfully tracked MAI–Cr 2d 18.04.1 and required findings that defendant agreed with others that one or more of them would murder Sims and that he so agreed *with the purpose of* facilitating commission of that offense and that in pursuance of the agreement he and one or more of the others engaged in overt acts.

Under § 562.016.1, a person acts with a culpable mental state if he acts purposely. Under § 562.016.2, he acts purposely, or with purpose, with respect to his conduct or to a result thereof when it is his conscious object to engage in that conduct or to cause that result. The instruction required a finding that defendant entered the conspiracy with the purpose of murdering Sims, and that his overt acts were for that purpose.

Judgment affirmed.

HIGGINS, C.J., BILLINGS, BLACKMAR and DONNELLY, JJ., and BARRETT, Sr.J., concur.

WELLIVER, J., concurs in result in separate opinion filed.

ROBERTSON, J., not participating because not a member of the Court when cause was submitted.

WELLIVER, Judge, concurring in result.

I respectfully concur only in the result because of the author's totally unnecessary and deprecating characterization of the prior holdings of this Court as "specious double jeopardy analyses."